UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-61907-CIV-GAYLES/SELTZER

PLATINUM PROPERTIES INVESTOR
NETWORK, INC., THE HARTMAN
MEDIA COMPANY, LLC., and JASON
HARTMAN

    Plaintiffs,

v.

JOHN DOES 1-2,

    Defendants.

_____/

## ORDER

THIS CAUSE is before the Court on the Emergency Motion to Stay Discovery and Set Briefing Schedule ("Motion") (DE 8) filed by Defendants John Does 1-2 ("Defendants") and was referred to the undersigned pursuant to 28 U.S.C. § 636.  Defendants ask this Court to decide whether the First Amendment shields from disclosure certain identifying information that they had voluntarily turned over to third parties and that Plaintiffs are now seeking to discover to advance their suit for trademark infringement and other intellectual property and unfair trade violations.  The Court concludes that the First Amendment does not shield from disclosure Defendants' identifying information in the possession of third parties and ORDERS that the Motion (DE 8) be DENIED.

I.    BACKGROUND

Plaintiffs filed a 10-count Complaint alleging a variety of federal and state statutory and common law claims against Defendants: Count I - Federal Service Mark Counterfeiting; Count II - Federal Service Mark Infringement; Count III - Cybersquatting;

Count IV - Federal Unfair Competition, False Representation and False Designation of Origin; Count V - Federal Dilution; Count VI - Florida Dilution; Count VII - Florida Statutory False Advertising; Count VIII - Florida Civil Conspiracy; Count IX - Common Law Unfair Competition; and Count X - Common Law Tortious Interference.

According to Plaintiffs, Defendants are orchestrating a service mark counterfeiting scheme involving the surreptitious creation, use, and promotion of a blackmail hit-site meant to harm Plaintiffs' businesses.  Specifically, Defendant John Doe # 1 controls the domain name JasonHartmanProperties.com ("the Infringing Domain Name"), which is identical to and incorporates Plaintiffs' registered service marks (JASONHARTMAN and JASONHARTMAN.COM), except for the addition of the generic term "properties." Complaint ¶ 50 (DE 1).  Plaintiffs' cybersecurity experts have discovered that John Doe #1 is using six additional similarly altered domain names that forward visitors to the Infringing Domain Name. Id. ¶ 48 n.1.  According to Plaintiffs,  Joe Doe # 1 is seeking to inflict maximal damage to Plaintiffs' business and trademarks by intentionally purchasing and using domain names specific to the real estate market (e.g., adding the real estate descriptor "properties" to "JASONHARTMAN"), the field in which the service marks are used and registered.  Id. ¶¶ 51-54.  Plaintiffs argue that the website displayed at the Infringing Domain Name (the "Infringing Website") was tailor-crafted to tarnish their federally registered service marks, destroy their business, and defame Jason Hartman personally.  Id. ¶¶ 55-58.  Furthermore, Defendant John Doe # 2, acting in concert with Defendant John Doe # 1, allegedly creates fake email addresses with different email providers and sends out mass emails attempting to trick Plaintiffs' clients and colleagues into visiting the Infringing Website.  Id. ¶¶ 59-77.  This trickery involves the impersonation

of Jason Hartman. Id. ¶ 59. Finally, Plaintiffs note that John Does # 1-2 have taken every step possible to cover their tracks and conceal their methods of impersonation and violations of law, including the use of a third-party concealing agent known in the hacker world. Id. ¶¶ 78-84.

After Plaintiffs filed their Complaint, the District Court ordered that they "may serve Subpoenas on third parties for the purpose of learning the identities of Defendants and to further learn about the extent of Defendants' alleged improper activities, as detailed in Plaintiffs' Complaint" (DE 8-4 at 8). The order further directed that "[a]ny third parties served with a Subpoena . . . shall have seven (7) business days to respond" and that "each party receiving a Subpoena pursuant to this Order, shall preserve all evidence relating to this Action, including without limitation emails, IP addresses, and contact information, within its or his or her custody, possession, and control" (DE 8-4 at 8-9).

On October 5, 2018, Plaintiffs issued a Subpoena to Bluehost, a web hosting or internet service provider, requesting: "All documents and things that identify or tend to identify the registrant or owner of the following domain names: www.thebrokeguru.com; www.jasonhartmanproperties.com; www.Jasonhartmaninvestments.com; www.Jasonhartmanlegalproblems.com; www.Jasonhartmanlies.com; www.Jasonhartmanrealestateinvestments.com; www.Jasonhartmanmedia.com" (DE 8-4 at 4-7). On that same date, Defendants John Does 1-2 filed the instant Emergency Motion to Stay Discovery and Set Briefing Schedule (DE 8), seeking to preserve their anonymity. In the Motion, Defendants represent that "Plaintiffs' counsel acknowledged that it would be more appropriate for this Court to resolve the substantive First Amendment issue than [a

court where a subpoena is served] having no connection to the underlying case" (DE 8 at 5).

After the District Court referred (DE 9) the Emergency Motion, the undersigned issued an Order (DE 10) granting the Motion pending further order of the Court and setting dates for the parties to submit memoranda of law.  On October 19, 2018, Plaintiffs filed their Opposition to Movant John Doe's Emergency Motion to Stay Discovery and Set Briefing Schedule ("Response") (DE 11), and on October 26, 2018, Defendants filed their Reply in Support of Defendant John Doe's Emergency Motion to Stay Discovery and Set Briefing Schedule ("Reply") (DE 12).  Pursuant to the undersigned's order, on November 2, 2018, Plaintiffs filed their Sur-Reply to Emergency Motion ("Sur-Reply") (DE 15).

The Motion is now ripe for review.

II.     MOTION

The Motion invokes the First Amendment in support of Defendants' request to preserve their anonymity.  According to the Motion, one of the defendants runs a website that does nothing more than compile public court records of Plaintiffs' litigation history and provide critical commentary; this defendant does not offer any goods or services on his website, does not engage in any sort of commerce, does not have any advertisements or promotions of any goods or services, and does not link to any website that offers goods or services.  Motion at 6 (DE 8).  Defendants, therefore, argue that none of Plaintiffs' Lanham Act claims, which all require commercial activity, appear to be actionable.  They additionally argue that Plaintiffs' cybersquatting claim appears to be meritless because Defendants are engaging in critical speech.  And they argue that Plaintiffs' state law claims appear to be similarly without merit.  Id.  Defendants' concern, therefore, is that the

Complaint does not appear to be intended to redress any actionable wrongdoing but, rather, to identify an anonymous critic that is compiling and posting publicly available records. Id.

Defendants argue that because they are engaging in what they characterize as purely expressive activity – critical commentary – they are entitled to substantial First Amendment protection of their anonymity. According to Defendants, Plaintiffs must make a heightened showing – they must satisfy a summary judgment standard – to overcome Defendants' right to engage anonymously in purely expressive activity. See Best Western Int'l, Inc. v. Doe, 2006 WL 2091695, at *4 (D. Ariz. July 25, 2006) (stating that "a summary judgment standard should be satisfied before [plaintiff] can discover the identities of the John Doe Defendants" because the acts at issue – anonymous internet postings by the defendants – as "purely expressive" are "entitled to substantial First Amendment protection"); In re Does 1-10, 242 S.W.3d 805, 822 (Tex. App. 2007) (imposing a summary judgment standard on the ground that, inter alia, a meaningful examination of evidence is necessary before a court can conclude "that a defendant's constitutional rights must surrender to a plaintiff's discovery needs") (citation omitted).

The flaw in Defendants' argument is two-fold: alleged intellectual property infringers enjoy only a limited right to anonymity when balanced against a plaintiff's need to discover their identities to pursue infringement litigation; furthermore, alleged infringers enjoy no expectation of privacy or anonymity as to identifying information they have voluntarily turned over to third parties, such as internet service providers.

> A.  Any Limited First Amendment Right to Anonymity is Outweighed Here by Plaintiffs' Need to Identify the Alleged Infringers to Pursue the Litigation

Plaintiffs argue that "to even serve the Complaint on Defendant, [they] must first name him – and expedited discovery is the only way." Sur-Reply at 2 (DE 15). Defendants object to Plaintiffs' effort to pursue the litigation by unmasking their anonymity, citing Best Western, supra. Yet, even Best Western recognized that "the right to speak anonymously is not absolute" and that "[t]hose who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights." 2006 WL 2091695, at *3 (citations and internal quotations omitted). Indeed, the Best Western court expressly noted the distinction between that case, which involved purely expressive conduct and therefore warranted substantial First Amendment protection of anonymity, and the intellectual property infringement (illegal downloading) cases that do not involve purely expressive conduct and therefore warrant only limited First Amendment protection. Id. at *5.

Anonymity aside, the Eleventh Circuit has made clear that "the first amendment is not a license to trammel on legally recognized rights in intellectual property." Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 849 (11th Cir. 1990) (citations and internal quotations omitted).  And where a defendant utilizes the internet to violate the intellectual property laws under the veil of anonymity, "courts . . . make clear that an internet subscriber has no protected privacy interest in his or her identifying information when same is sought for the purpose of maintaining a[n] [intellectual property] infringement action." Plastic The Movie v. Doe, 2015 WL 5634625, at *4 (S.D. Fla. Sept. 24, 2015)

6

(citing Arista Records, LLC, 604 F.3d 110, 117, 124 (2nd Cir. 2010). ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment .... [W]e regard Doe 3's expectation of privacy for sharing copyrighted music through an online file-sharing network as simply insufficient to permit him to avoid having to defend against a claim of copyright infringement")); Rotten Records, Inc. v. Doe, 2015 WL 3500488, at *2 (W.D.N.Y. June 2, 2015) ("Plaintiff's interest in learning Defendant's name and address outweighs Defendant's privacy interest")).  See also Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004) ("Anonymous speech, like speech from identifiable sources, does not have absolute protection. . . .  Parties may not use the First Amendment to encroach upon the intellectual property rights of others."); Bloomberg, L.P. v. John Does 1-4, 2013 WL 4780036, at *2 (S.D.N.Y. June 26, 2013) (stating in a trademark case that "anonymity is unprotected to the extent that it is used to mask infringement of intellectual property rights."); Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

Here, Defendants attempt to liken their activities to those of the anonymous pamphleteers who "provided essential contributions to the robust debate over the form [of] the nation" during "the birth of the republic," and they argue that "people who have committed no wrongdoing should be free to participate in online forums without fear that their identity will be exposed under the authority of the court . . . ."  Reply at 3-4 (DE 12) (internal quotations and citations omitted) (emphasis added).  To plausibly liken Defendants' activities to those of the Founding Fathers, however, this Court would have

7

to disregard the Complaint's detailed allegations of impersonation and deceit, as well as its multiple claims of intellectual property and unfair trade violations.

According to the Complaint, Plaintiffs own U.S. service mark registration Nos. 4,470,582 and 4,418,120, for the marks JASON HARTMAN and JASONHARTMAN.COM respectively. Defendant John Doe # 1 controls the domain name JasonHartmanProperties.com, which is essentially identical to and incorporates Plaintiffs' marks. Complaint ¶ 50 (DE 1). Defendants have allegedly created fake email addresses with different email providers and sent out mass emails attempting to confuse Plaintiffs' clients and colleagues into believing the communications are coming from Plaintiffs and that they are visiting Plaintiffs' website. In reality, Defendants are directing them to JasonHartmanProperties.com. Id. ¶¶ 59-77. In sum, the Complaint details that Defendants are actively engaged in impersonation using various email addresses, sending mail to Plaintiffs' clients, sending those Plaintiffs' clients to an infringing domain to fill out a data collection form, and evading capture by using multiple off-shore concealing agents meant for cyber-pirates. The infringing domains are tailored to mislead Plaintiffs' clients and colleagues into believing the domains belong to Plaintiffs. If true, the conduct alleged in the Complaint cannot be characterized as purely expressive.

Although as a general rule discovery proceedings take place only after the defendant has been served, courts often make exceptions, permitting limited discovery prior to service to permit a plaintiff to learn the identifying facts necessary to permit service on a defendant. See, e.g., Liberty Media Holdings, LLC v. Bittorrent Swarm, 2011 WL 13223711, at *1 (S.D. Fla. Aug. 4, 2011); Columbia Ins. Co.,185 F.R.D. at 577 (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). Such requests for expedited

discovery are granted upon a showing of good cause. Dell Inc. v. BelgiumDomains, LLC, 2007 WL 6862341, at *6 (S.D. Fla. Nov. 21, 2007) (trademark counterfeiting case).

"Within the internet context, Courts have recognized service of process can pose a special dilemma for plaintiffs in cases . . . [where] the tortious activity occurred entirely online." Liberty, 2011 WL 13223711, at *1 (citations and internal quotations omitted). Because the First Amendment does not shield illegal conduct, courts in this District routinely allow plaintiffs to expedite discovery to unmask anonymous defendants merely upon a showing of good cause. See Crespo v. Doe, No. 14-cv-20256 (DE 9) (S.D. Fla. May 14, 2014) (copyright infringement); TracFone Wireless, Inc. v. Does, No. 11-CV-21871(DE 6) (S.D. Fla. May 25, 2011) (trademark case); AT & T Mobility LLC v. Dynamic Cellular Corp., 2008 WL 2139518, at *2 (S.D. Fla. May 7, 2008) (trademark case); see also Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) ("courts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition"); Qwest Comm. Intl. Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003) ("The good cause standard may be satisfied ... where the moving party has asserted claims of infringement and unfair competition.").

"A three-factor test has been developed for instances where courts are considering motions requesting early discovery to assist in the identification of certain defendants." Liberty, 2011 WL 13223711, at *1 (citing Columbia Ins. Co., 185 F.R.D. at 578-80). The plaintiff must: (1) "identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court," (2) "identify all previous steps taken to locate the elusive defendant," and (3) "establish to

9

the Court's satisfaction that [its] suit against defendant could withstand a motion to dismiss." Liberty, 2011 WL 13223711, at ** 1-2 (citations and internal quotations omitted). Because all three factors are met in this case, the undersigned finds good cause for allowing the expedited discovery sought by Plaintiffs.

First, Plaintiffs have identified the missing parties with sufficient specificity such that the court can determine that Defendants are real persons who could be sued in federal court. Plaintiffs' Complaint states that:

> 16. Defendant John Doe #1 is the controller of several infringing websites, including JasonHartmanProperties.com, some of which are technically owned by "1337 Services LLC" dba "Njalla" as an identity concealing agent.
>
> 17. John Doe #2 is the owner, controller, and user of the email addresses JasonHartman@Protonmail.com and HartmanInvestigators@gmail.com.
>
> 18. Plaintiffs are not aware of the true names and capacities of Defendants John Does 1-2. Upon information and belief, these Defendants are either the same person or have colluded with one another in the unlawful conduct described in this Complaint. Plaintiffs will amend the Complaint to allege the names and capacities of these Defendants when ascertained.

(DE 1 ¶¶ 16-18). Here, Plaintiffs have stated that the missing parties are persons, that they control specific websites and email addresses, and that they have been observed infringing on its property rights (DE 1 ¶¶ 19-22). As such, they are likely real persons who can be sued in federal court. See Liberty, 2011 WL 13223711, at *1.

Second, Plaintiffs have identified all previous steps taken to locate the elusive defendants. Plaintiffs allege that Defendants are concealing their identifies and evading capture by using multiple off-shore concealing agents meant for cyber-pirates (DE 1 ¶¶ 5-6, 78-84). The only information Plaintiffs have is Defendants' website and email addresses

(DE 1 ¶¶ 16-17). Accordingly, to be able to serve Defendants, Plaintiffs have no reasonable alternative other than to subpoena their identifying information from the internet service providers or web hosting companies. Plaintiffs, therefore, have sufficiently identified the steps they have taken to locate Defendants.

Finally, Plaintiffs have established that their Complaint against Defendants could withstand a motion to dismiss. Plaintiffs have alleged a plausible claim for trademark infringement (DE 1 ¶¶ 100-103).[1] "To establish a prima facie case of trademark infringement under § 1114, a plaintiff must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Commodores Entm't Corp. v. McClary, 879 F.3d 1114, 1130-31 (11th Cir. 2018). Plaintiffs' Complaint alleges that (1) they own specific federally registered Service Marks in connection with the sale of real estate (DE 1 ¶¶ 45, 101), and that (2) Defendants have adopted a confusingly similar mark (DE 1 ¶¶ 48-52, 102). Because Defendants' infringing domain ("JasonHartmanProperties.com") is confusingly similar to Plaintiffs' mark ("JasonHartman.com") (DE 1 ¶¶ 38-39, 48, 50), as both are connected with the real estate market, Plaintiffs have stated a claim that could survive a motion to dismiss. See Liberty, 2011 WL 13223711, at *2.

Defendants argue that "because Plaintiffs' allegations do not identify a single good or service offered by Doe on his website (because Doe does not offer any goods or services on his website), the allegations in the Complaint are insufficient to state a prima

---

[1] Although the Complaint sets forth ten claims, the parties have only addressed the sufficiency of the trademark infringement claim.

facie case of trademark infringement." Reply at 8 (DE 12). Yet, the virtual impersonation of Plaintiffs (DE 1 ¶¶ 44-58, 59-70) amounts to passing off on its own, which establishes a prima facie claim. See Eppley v. Iacovelli, 2010 WL 3282574, at *5 (S.D. Ind. Aug. 17, 2010) ("The misuse of Dr. Eppley's trademarked name, furthermore, has amounted in some instances to virtual identity theft.").

Moreover, Defendants incorrectly suggest that to be "used in commerce" there must be an offer for sale or sale on an infringing website.[2] First, Defendants' argument that to be "used in commerce" requires an offer for sale or sale on an infringing website reads the "in connection with" element out of the relevant statute. See 15 U.S.C. § 1114(1)(a) (stating that it is a violation to "use in commerce any . . . counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive") (emphasis added). In Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc., 244 F. Supp. 3d 1368, 1376 (N.D. Ga. 2017) the alleged infringer had similarly argued that the infringing web postings did not make use of the trademarks in commerce because the postings themselves did not sell or offer anything for sale. The court, however, found this contention to be "unpersuasive," explaining that the infringer "interprets th[e] [use in commerce] requirement too narrowly"

---

[2] Defendants misconstrue the Complaint's allegation that "John Doe # 1 does not use the Infringing Domain Name in connection with a *bona fide* offering of goods or services." (Reply at 9 (citing Complaint ¶ 53 (DE 1)). Defendants attempt to read out the "*bona fide*" qualification. Plaintiffs plainly contend that John Doe # 1 uses the Infringing Domain Name in connection with the offering of goods and services – he offers services that compete with Plaintiffs. See Complaint ¶¶ 2, 62-63, 65, 90, 102 (DE 1).

holding that the "in connection with" requirement of 15 U.S.C. §§ 1114(1)(a) and 1125(a)(1) was met because the company's eventual hiring of employees as a result of the web postings was sufficiently connected to [its] services. Id.  Similarly, even if Defendant does not sell goods or services directly on the infringing websites, the Complaint alleges that he does provide services in interstate commerce, see Complaint ¶¶ 2, 62-63, 65, 90, 102 (DE 1), and it alleges that he uses the infringing service marks to steal clients, see Complaint ¶¶ 51, 54-55, 59-60, 73, 75, 90, 102, 105, 112, 133. Therefore, Defendant is using Plaintiffs' service marks "in connection with" the sale, offering for sale, distribution, and advertising of services.

Furthermore, applicable case law specifically holds that "use in commerce" need not involve a sale or offer for sale directly in the infringing content, provided that the defendants are using the service marks at issue for some other financial gain.[3] In the instant matter, Defendants are allegedly using Plaintiffs' service marks for their own financial gain, and their infringing websites are designed to harm Plaintiffs commercially by disparaging them and preventing Plaintiffs from exploiting their service marks and the

---

[3] See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1216 (11th Cir. 2008) (holding that the use of a trademark in hidden metatags intended to influence internet search engines was a use in commerce and could be the basis of a trademark infringement claim); Jews For Jesus v. Brodsky, 993 F. Supp. 282, 308 (D.N.J.), aff'd, 159 F.3d 1351 (3d Cir. 1998) (internal citations omitted) (finding that use of a trademark in a domain name on an alleged criticism site was a commercial use of the mark "because it [was] designed to harm the Plaintiff Organization commercially by disparaging it and preventing the Plaintiff Organization from exploiting the Mark and the Name of the Plaintiff Organization. In addition, the Defendant Internet site has and will continue to inhibit the efforts of Internet users to locate the Plaintiff Organization Internet site."); Eppley v. Iacovelli, 2010 WL 3282574, at *4 (S.D. Ind. Aug. 17, 2010) (holding that diverting internet traffic away from plaintiffs' actual sites for a commercial purpose constitutes a commercial use).

Jason Hartman name. Furthermore, Defendants' infringing websites have inhibited the efforts of internet users to locate Plaintiffs' actual website, which is a federally registered service mark (JASONHARTMAN.COM), and their conduct is diverting internet traffic away from Plaintiffs' actual sites for a commercial purpose. See Complaint ¶¶ 2, 51, 54-55, 59-60, 62-63, 65, 73, 75, 90, 102, 105, 112, 133 (DE 1).[4]

In sum, Plaintiffs have shown good cause for expedited discovery by satisfying the three-part test set forth in Liberty. The Court concludes that Plaintiffs have overcome whatever limited First Amendment interests in privacy or anonymity Defendants may enjoy in this context.

B. No Expectation of Anonymity in Information Turned Over to Third Parties

Even if the law did not limit Defendants' First Amendment interest in privacy or anonymity in an intellectual property infringement action, they would nonetheless be without a legal basis to contest disclosure of the subpoenaed information. The subpoena attached to Defendants' Motion (DE 8-4) is directed to Bluehost, a web hosting company or internet service provider, and it requests all documents and things that identify or tend to identify the registrant or owner of the infringing domain name identified in the Complaint, as well as of six affiliated domain names. The subpoena, therefore, seeks information that Defendants freely and voluntarily turned over to a third party, Bluehost.

"The Supreme Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." Plastic the

---

[4] Defendants' reliance on the Eleventh Circuit's decision in Southern Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235 (11th Cir. 2009), analyzing the "used in commerce" language of 15 U.S.C. § 1125(a), is unavailing as that case was ultimately decided on factual, not legal, grounds.

14

Movie Ltd., 2015 WL 5634625, at *4 (Goodman, M.J.) (internal quotation omitted) (citing United States v. Hambrick, 55 F. Supp. 2d 504, 508 (W.D. Va. 1999) (quoting Smith v. Maryland, 442 U.S. 735, 743-44 (1979)). Plastic the Movie was a copyright infringement action in which the plaintiff sought the identity of a John Doe defendant in order to move forward with the suit. Observing that the information being sought had previously been provided by the defendant to a third party, the court rejected the defendant's privacy argument against disclosure: "Here, there is no expectation of privacy in Internet subscriber information because it has already been exposed to a third party, the Internet Service Provider." Id. (citing Malibu Media, LLC v. Does, 2012 WL 6019259, at *4 (N.D. Ind. Dec. 3, 2012) (internal quotations omitted)). Other opinions from this District have similarly held that:

> Internet subscribers do not have a reasonable expectation of privacy in subscriber information they have already conveyed to their [Internet Service Providers]. Additionally, an individual has no protected privacy interest in their name, address, phone number, e-mail address, or Media Access Control address when there is an allegation of copyright infringement. Thus, whatever privacy interest the Doe Defendant may have in his/her contact information is overcome by the Plaintiff's need to identify and pursue litigation against those purported infringers. (internal citations omitted).

AF Holdings, LLC v. Does 1-162, 2012 WL 488217, at *4 (S.D. Fla. 2012) (Scola, D.J.); accord Malibu Media, LLC v. Doe, 2014 WL 11958625, at *3 (S.D. Fla. 2014) (Altonaga, D.J.) (same); Boy Racer, Inc. v. John Does 1-34, 2012 WL 1535703, at *4 (S.D. Fla. 2012) (Goodman, M.J.) (same).

Here, Plaintiffs served a subpoena on Defendants' web hosting company or internet service provider to disclose Defendants' identifying information so that they can pursue the

infringement litigation; to prevent disclosure of their identities and to preserve their anonymity, Defendants are opposing the subpoena. Defendants, however, have "no expectation of privacy in Internet subscriber information because it has already been exposed to a third party, the Internet Service Provider." First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 248-49 (N.D. Ill. 2011).

### III. CONCLUSION

For the foregoing reasons, the undersigned concludes that whatever limited First Amendment interest in privacy or anonymity Defendants may have in this trademark infringement action is overcome by Plaintiffs" need to obtain Defendants' identifying information in order to pursue this litigation. Furthermore, having voluntarily turned over their identifying information to an internet service provider, Defendants have no expectation of privacy in that information and no legal basis to prevent its disclosure.

Accordingly, it is hereby ORDERED that the Emergency Motion to Stay Discovery and Set Briefing Schedule (DE 8) filed by Defendants John Does 1-2 is DENIED, that the temporary stay ordered October 15, 2018 (DE 10) is VACATED, and that the expedited discovery ordered by the District Court on August 27, 2018 (DE 8-4 at 8) shall immediately resume.

DONE AND ORDERED in Chambers, Fort Lauderdale, Florida, this 19th day of November 2018.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished counsel via CM/ECF